IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**THOMAS RAY, III,**

      **Plaintiff,**

v.                                                         **Case No. 2:15-cv-00948**

**PRIMECARE MEDICAL INC. and
JANE DOE (2) MEDICAL DIRECTOR,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is defendant PrimeCare Medical Inc.'s Motion to Dismiss (ECF No. 22), which is unopposed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff is a federal prisoner who, while he was a pre-trial detainee, was housed in several United States Marshals Service ("USMS") contract facilities, including the South Central Regional Jail ("SCRJ") in Charleston, West Virginia. Inmate medical care at the SCRJ is provided by PrimeCare Medical, Inc. (hereinafter "PrimeCare"). Prior to being in federal custody, the plaintiff suffered from urological problems and had a suprapubic catheter inserted.

The plaintiff's Amended Complaint alleges that, while he was incarcerated at the SCRJ, the on-site physician (who remains unidentified) told him that, according to his

medical records from Kings Daughters Medical Center ("KDMC") in Ashland, Kentucky,[1] the plaintiff had refused surgery and, thus, the USMS would not approve any further treatment by a urologist. Thus, the plaintiff alleges that he was told he would have to wait for additional care until he was in the custody of the Federal Bureau of Prisons ("BOP"). Otherwise, the plaintiff alleges, he was told he would have to go to a free clinic or pay for treatment himself. (ECF No. 11-2 at 5, ¶¶ 22-25).

The plaintiff also alleges that he was forced to sleep on the floor, that he was falsely placed on suicide watch because he refused to eat one meal, and that he was falsely accused of removing his catheter. (*Id.*, ¶¶ 26-27). He further contends that he was forced to transport to another correctional facility in Virginia, eight hours away, with a clogged catheter. (*Id.*). The plaintiff further alleges that he was "overmedicated," but does not provide any specific facts concerning this allegation, despite being advised of the pleading requirements and being granted an opportunity to file his Amended Complaint.[2] The Amended Complaint alleges that the conduct of the PrimeCare defendants constituted both deliberate indifference and negligence, and that "as a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the defendants, [he] was caused to sustain serious and permanent injuries and damages . . ." and will continue to do so in the future. (*Id.* at 6-7, ¶ 31).

---

[1] Prior to being housed at the SCRJ, the plaintiff was in custody at the Carter County Detention Center in Grayson, Kentucky, and received medical care at KDMC. The plaintiff has filed additional lawsuits concerning his pre-trial medical treatment against the USMS, the Carter County Detention Center and the Northern Neck Regional Jail in Warsaw, Virginia, where he was held as a pre-trial detainee after he left the SCRJ. (ECF No. 11-1 at 1-2).

[2] The Amended Complaint also contains some allegations about conditions of confinement, such as access to the law library, over which PrimeCare and its personnel have no control or responsibility.

On May 13, 2016, PrimeCare, by counsel, filed the instant Motion to Dismiss (ECF No. 22), and a Memorandum of Law in support thereof (ECF No. 23).[3] PrimeCare's motion asserts that the Complaint must be dismissed because the plaintiff failed to exhaust his administrative remedies. (ECF No. 24 at 4-6). PrimeCare further contends that, to the extent that the plaintiff is alleging a claim of medical negligence, he has failed to comply with the pre-filing requirements of the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.* (*Id.* at 6-8). PrimeCare further contends that the Complaint fails to state a sufficient claim under 42 U.S.C. § 1983 because PrimeCare is not a "person" who may be sued thereunder and because the plaintiff has not sufficiently alleged an Eighth Amendment claim. (*Id.* at 3-4, 8-11). The undersigned will address each of these arguments *infra*.

As the plaintiff had not responded to the defendants' motion, on April 10, 2017, the undersigned entered an Order directing the plaintiff to respond to the motion by April 24, 2017, with an opportunity for the defendants to file a reply by May 1, 2017. (ECF No. 25). On April 20, 2017, the undersigned's Order, which had been mailed to the plaintiff at FCI Coleman, was returned as undeliverable. However, the Clerk's Office re-mailed the Order to the plaintiff at USP Terre Haute, in Terre Haute, Indiana, where the plaintiff is presently incarcerated. As of today's date, the plaintiff has neither filed a response to the motion to dismiss, nor requested additional time to do so. Thus, the undersigned has treated the defendants' Motion to Dismiss as unopposed. The defendants did not file a reply. This matter is ripe for adjudication.

---

[3] On November 30, 2016, PrimeCare filed a Corrected Memorandum in Support of its Motion to Dismiss (ECF No. 24), in which a typographical error concerning the plaintiff's name was corrected. Otherwise, the Memorandum and Corrected Memorandum appear to be identical. The undersigned will cite to the Corrected Memorandum herein.

## **STANDARD OF REVIEW**

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

## ANALYSIS

### A. The plaintiff failed to exhaust his administrative remedies prior to filing his Complaint.

PrimeCare asserts that the Amended Complaint must be dismissed because the plaintiff failed to exhaust the available administrative remedies prior to filing this suit. (ECF No. 24 at 4-6). PrimeCare's Corrected Memorandum of Law contends that the plaintiff has admitted that he never filed a grievance regarding any of the issues about which he now complains. (*Id.* at 6).

PrimeCare's Corrected Memorandum of Law addresses the requirements of the West Virginia Prison Litigation Reform Act ("WVPLRA"), contained in West Virginia Code § 25-1A-2, mandating that an inmate "may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted. W. Va. Code § 25-1A-2(c). (ECF No. 24 at 4). PrimeCare's Corrected Memorandum of Law further asserts that "an ordinary administrative remedy" includes complaints concerning health care. (*Id.* at 4-5) (citing W. Va. Code § 25-1A-2(a)).[4] (*Id.* at 5).

> As aptly summarized by our sister court:
>
> Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed

---

[4] Although not cited by the defendants, section 1997e(a) of the federal Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires exhaustion of available administrative remedies before an action may be filed under 42 U.S.C. § 1983, is also applicable to the plaintiff's deliberate indifference claim.

> to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

*Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D.W. Va. Oct. 16, 2012) (Kaull, M.J.), *report and recommendation adopted*, No. 1:11CV108, 2012 WL 5845219 (N.D.W. Va. Nov. 19, 2012) (Keeley, J). (*Id.* at 5-6). PrimeCare emphasizes that "administrative remedies are not exhausted until all three steps of the grievance process have been completed." (*Id.* at 6).

The plaintiff's Amended Complaint concedes that he has not exhausted this grievance process (*see* ECF No. 11 at 3) and he failed to respond to the Motion to Dismiss to dispute PrimeCare's argument. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to exhaust his administrative remedies concerning any of his claims before filing his Complaint and Amended Complaint and, therefore, dismissal of this civil action, in its entirety, is warranted.

6

**B.     The plaintiff failed to comply with the requirements of the MPLA.**

PrimeCare further asserts that, to the extent that the plaintiff is claiming negligence in the medical care rendered to him by PrimeCare personnel, his cause of action is governed by the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.*, specifically, W. Va. Code § 55-7B-6(b), requiring pre-suit notification and a screening certificate of merit. *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006). As noted in PrimeCare's Corrected Memorandum of Law, West Virginia Code § 55-7B-6 provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider*, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and *shall* state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A *separate screening certificate of merit must be provided* for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6 (emphasis added in PrimeCare's brief). (ECF No. 24 at 6-7). The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care

7

services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). As recently noted by the Supreme Court of Appeals of West Virginia, "[w]here the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e), the Act applies regardless of how the claims have been pled." *Minnich v. MedExpress Urgent Care, Inc.-West Virginia*, 796 S.E.2d 642, 646 (2017) (quoting *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 453 (2007)).

PrimeCare further asserts, "[n]owhere in his complaint does the plaintiff allege compliance with the mandatory notice and screening certificate of merit requirements of the MPLA." (ECF No. 24 at 7). PrimeCare further asserts that these requirements have been determined to be mandatory for medical malpractice or negligence claims filed in federal courts. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision). (*Id.* at 8).

The plaintiff has not disputed either the applicability of the MPLA to his case or his failure to comply with the MPLA requirements. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that dismissal of the plaintiff's allegations of medical negligence in the Amended Complaint is required because the plaintiff failed to meet the requirements of the MPLA, which clearly appear to apply to his negligence claims.

### C. The Complaint fails to state a plausible constitutional claim upon which relief can be granted under 42 U.S.C. § 1983.

PrimeCare has also moved to dismiss the plaintiff's Amended Complaint on the basis that it fails to state a plausible claim of deliberate indifference to a serious medical need against PrimeCare and its personnel. The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by <u>a person</u> acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

As the plaintiff was a pre-trial detainee, and not a convicted prisoner, at the time in question, his claim for inadequate medical treatment arises, if at all, under the due process clause of the Fourteenth Amendment, and not under the Eighth Amendment prohibition against cruel and unusual punishment, as asserted by the defendants. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992). However, the inquiry under both amendments is essentially analogous: whether the defendant exhibited deliberate indifference to a serious medical need. *See*

9

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), *overruled on other grounds by* Wilkins *v. Gaddy*, 559 U.S. 34 (2010). Thus, courts often rely upon Eighth Amendment precedent when analyzing such claims by pre-trial detainees.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

Because PrimeCare is the contracted medical provider for the West Virginia Regional Jail and Correctional Facility Authority, a state agency, the deliberate indifference standard is applicable to the conduct of both PrimeCare and its individual employees, who may be considered to be acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1998). Although PrimeCare has argued that it is not a "person" under section 1983 (ECF No. 24 at 8-9), the Fourth Circuit and other federal courts have held that "[a] private corporation is liable under § 1983 . . . when an official policy or custom causes the

10

alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Motto v. Corr. Med. Servs.,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.,* Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D. W. Va., Dec. 18, 2008) (Faber, J. (unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

However, as noted in PrimeCare's Corrected Memorandum of Law (ECF No. 24 at 9), the plaintiff has not pled any allegations concerning such a policy or custom with regard to the conduct of PrimeCare Medical, Inc. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a plausible deliberate indifference claim against PrimeCare Medical, Inc. and that the plaintiff's claims against it should be dismissed for failure to state a claim upon which relief can be granted.

Turning to the conduct of the unidentified individual PrimeCare defendants, the burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer [v. Brennan]*, 511 U.S. [825] 832-35 [(1994)]; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977). In *Webster*, the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye. *Id.* at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. *Id.* The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat him, Webster's allegations did not constitute a cognizable constitutional claim. *See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

PrimeCare's Corrected Memorandum of Law asserts that the plaintiff's Amended Complaint neither pleads nor meets the legal threshold for a viable deliberate indifference claim. (ECF No. 24 at 9-12). Their Memorandum of Law states:

> In the case *sub judice*, it is difficult to discern from the complaint whether the plaintiff's medical need was serious. Even assuming that the plaintiff's medical need was serious, which the defendant does not concede, the

12

> allegations in his Complaint amount to nothing more than a disagreement with PrimeCare personnel over the type and extent of his medical treatment. This does not state a cause of action under the Eighth Amendment. [Citation omitted].

(*Id.* at 11).

The Amended Complaint does not allege any specific conduct by an identified individual defendant that rises to the level of deliberate indifference to a serious medical need. Much of the Amended Complaint is couched in terms of negligent conduct or a disagreement between the plaintiff and his healthcare providers concerning necessary treatment, which does not rise to the level of a constitutional violation. Moreover, the plaintiff has not sufficiently alleged any specific conduct by individual PrimeCare personnel. Rather, he makes conclusory allegations against unidentified employees. Even with the liberal construction afforded to the plaintiff, such allegations are too threadbare to establish any plausible constitutional claim. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a claim upon which relief can be granted against any individual PrimeCare personnel.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** PrimeCare's Motion to Dismiss (ECF No. 22) and dismiss this civil action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States

District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

June 13, 2017

Dwane L. Tinsley
United States Magistrate Judge